WO

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

Shaun Michael Harris,                    )    CIV-13-1888-PHX-DJH (MHB)
                                         )
            Petitioner,                  )    **REPORT AND RECOMMENDATION**
                                         )
vs.                                      )
                                         )
Charles L. Ryan, et al.,                 )
                                         )
            Respondents.                 )
                                         )
_____)

TO THE HONORABLE DIANE J. HUMETEWA, UNITED STATES DISTRICT COURT:

       Petitioner Shaun Michael Harris, who is confined in the Arizona State Prison
Complex, Browning Unit, in Florence, Arizona, filed a *pro se* Petition for Writ of Habeas
Corpus pursuant to 28 U.S.C. § 2254 (Docs. 1, 6).  Respondents filed an Answer on July 25,
2014 (Doc. 31), but despite having the opportunity to do so, Petitioner has not filed a reply.

                              **BACKGROUND**[1]

       The following facts were found by the Arizona Court of Appeals:

       J.S. waited outside his apartment for a friend because he had plans to "kick it
       with some females." [Petitioner] approached J.S. and told him to "[t]ake [his]
       business elsewhere." [Petitioner] then hit J.S. in the side of the head with a
       closed fist. J.S. went inside to get his older brother, S.S., to diffuse the
       situation.

       S.S. went outside to talk to [Petitioner]. [Petitioner] lifted his shirt and S.S.
       saw the handle of a gun. S.S. spoke with [Petitioner] and told J.S. to go back

_____

       [1] Unless otherwise noted, the following facts are derived from the exhibits submitted
with Doc. 31 – Respondents' Answer.

1
2

inside because [Petitioner] would not bother him anymore. The confrontation ended peacefully. S.S. and J.S. returned to their apartment.

3
4

Sometime later, J.S. went outside a second time and waited for his friend to pick him up. [Petitioner] approached J.S. again, pulled out a gun, and aimed it at his chest. J.S. then ran inside and told his brothers, S.S. and E.S., what had happened.

5
6
7
8

As the brothers talked in the hallway of their apartment, S.S. looked out the bedroom window and saw a gun in the shadow. S.S. told his brothers to move, and as they ducked, all three brothers heard a shot fired. The bedroom window cracked and S.S. and J.S. called the police on separate phones to report the shooting. Officers J.H. and R.R. were the first to arrive at the scene. They, along with other officers, were unable to find the bullet or the bullet casing.

9
10
11
12
13
14
15

Meanwhile, [Petitioner] attempted to join a nearby gathering. The group did not allow [Petitioner] to join them because no one at the gathering knew him. On [Petitioner's] third attempt to join, he saw City of Phoenix Officers D.H. and M.W. approaching the group. The officers had responded to the police report and were asked to find someone with [Petitioner's] general description. [Petitioner] turned and headed toward a nearby patio. The officers saw [Petitioner] walk away from the gathering and decided to follow him. [Petitioner] scurried into a corner of the patio, and Officer D.H. heard what "[s]ounded like a metal object hitting something hard." When Officer D.H. got to the corner of the patio, he saw [Petitioner] grab a black shirt off the clothesline and put it on. [Petitioner] then pretended to talk on his cell phone. Officer D.H. apprehended [Petitioner] and had him sit down on the curb. A short time later, Officer D.H. went back to the patio and found a .22 caliber gun.

16
17
18

After [Petitioner] was apprehended, Officer J.H. drove J.S. and S.S. separately to [Petitioner's] location. Each brother identified [Petitioner] as the man who was at the apartment earlier that evening. Four of the five officers that testified at trial stated that they saw a picture on [Petitioner's] cell phone of [Petitioner] holding a .22 caliber gun similar to the one found by Officer D.H.

19    (Exhibit V.)

20      On March 13, 2006, Petitioner was indicted in the Maricopa County Superior Court

21    with one count of assault, a class 3 dangerous misdemeanor (Count 1); three counts of

22    aggravated assault, class 3 dangerous felonies (Counts 2-4); one count of discharge of a

23    firearm at a structure, a class 2 dangerous felony (Count 5); and one count of misconduct

24    involving weapons, a class 4 dangerous felony (Count 6).  (Exh. A.)  The State, however,

25    successfully moved to dismiss Counts 2 and 3 following its case-in-chief.  (Exh. N.)

26      After a 3-day trial, the jury failed to reach a verdict on Counts 1 and 4, but found

27    Petitioner guilty as to Counts 5 and 6.  (Exh. P.)  The jury further found that both felonies

28    were dangerous.  (Id.)

- 2 -

On September 13, 2007, the trial court sentenced Petitioner, with two prior historical felony convictions, to an aggravated 17-year term of imprisonment for Count 5, and a concurrent, presumptive 6-year term of imprisonment for Count 6. (Exh. R.)  The trial court credited Petitioner with 558 days of presentence incarceration. (Id.)

On September 21, 2007, Petitioner filed a timely notice of appeal from his convictions and sentences. (Exh. S.)  On March 20, 2008, Petitioner's attorney filed a brief pursuant to Anders v. California, 386 U.S. 738 (1967) and State v. Leon, 451 P.2d 878 (Ariz. 1969), asking the court to search the record for fundamental error, and requesting that Petitioner be permitted to file a supplemental brief, raising any issues he believed to have merit. (Exh. T.)  In his *pro per* supplemental brief, Petitioner requested the court consider whether: (1) the warrantless search and seizure of his cellular phone violated the Fourth Amendment; (2) he was unduly prejudiced when the jurors saw him escorted by sheriff's deputies during a court recess; (3) the trial court should have ordered a separate mental health evaluation when considering mitigating factors; and (4) his right to a speedy trial was violated pursuant to Rule 8 of the Arizona Rules of Criminal Procedure. (Exhs. T, U.)

Finding no fundamental error and no merit in Petitioner's claims, the Arizona Court of Appeals affirmed Petitioner's convictions and sentences in a memorandum decision issued on September 23, 2008.  (Exh. V.)  Specifically, the court held that: (1) the search of Petitioner's cell phone incident to arrest was sufficiently analogous to that of a closed container, which was authorized by New York v. Belton, 453 U.S. 454, 460-61 (1981); (2) Petitioner could not demonstrate that he was actually prejudiced when a juror saw him, out of handcuffs, standing near a deputy sheriff; (3) the trial court did not err when it did not sua sponte order a mental health evaluation, and Petitioner's claim regarding what a further mental health evaluation might have shown was entirely speculative; and (4) insofar as was apparent from the record, Petitioner's right to a Rule 8 speedy trial was not violated. (Id.)

Petitioner did not petition for review in the Arizona Supreme Court. (Exh. X.)  On November 14, 2008, the Arizona Court of Appeals issued its order and mandate. (Id.)

On October 17, 2008, Petitioner commenced his sole PCR proceeding by filing a timely PCR notice. (Exh. W.) On March 2, 2009, Petitioner's appointed counsel notified the state court that she had completed her review and was unable to discern any colorable claim upon which to base a PCR petition. (Exh. Y.) Appointed counsel further requested an extension of time for Petitioner to file a *pro per* PCR petition. (Id.) On July 28, 2010, Petitioner filed his PCR petition. (Exh. AA.) In his petition, he argued that: (1) the State submitted, without proof, that he had a third prior felony conviction and gang affiliation, which resulted in an aggravated sentence; (2) the police illegally seized and searched his cellular phone; (3) the trial court erred in refusing to allow Petitioner to impeach Officer Hamernick with his misdemeanor conviction for DUI; (4) his constitutional right to a fair trial was violated when the trial court failed to investigate the fact that a juror observed Petitioner in the hallway being escorted by a sheriff's deputy; (5) the State should not have been allowed to inform the jury that he had prior felony convictions because he did not take the stand; (6) the State presented insufficient evidence to establish that he discharged a firearm at a structure; (7) the trial court erred in refusing to provide the jury with a Willits instruction; and (8) trial counsel was ineffective for failing to request a mental health evaluation to establish mitigation at sentencing, request a photo lineup, investigate leads and interview witnesses, discuss trial strategy, provide him with discovery, object to speedy trial violations, investigate witness/victim backgrounds, request a Rule 11 evaluation prior to trial, point out to the jury that a black shirt was not presented at trial, and urge the trial court to admit evidence of the number of bullets in the handgun's magazine. (Id.)

Shortly thereafter, Petitioner successfully moved to amend his PCR petition. (Exhs. BB-EE.) The amended petition, however, only reiterated his ineffective assistance of counsel (IAC) and insufficient evidence claims. (Exhs. BB, DD.) Petitioner additionally alleged that he "was promised a better deal" in an unrelated case, and the prosecutor lied to the trial court about it because Petitioner "talked bullshit to him in court." (Exh. DD.)

On December 2, 2010, the state court dismissed Petitioner's PCR petition, finding that all of the claims, with the exception of his IAC claim, were raisable on direct appeal and thus

precluded pursuant to Rule 32.2(a). (Exhs. HH, II.) With regard to the IAC claim, the state court found that Petitioner had failed to establish either prong of the <u>Strickland</u> test because: (1) Petitioner did not provide expert affidavits demonstrating trial counsel's performance was deficient and it was not obvious from the record that trial counsel's performance was deficient; and (2) Petitioner did not present evidence that the outcome would probably have been different and there was nothing in the record to suggest that the outcome would probably have been different had there been a Rule 26.5 evaluation requested. (<u>Id.</u>)

On January 6, 2011, Petitioner filed a petition for review in the Arizona Court of Appeals. (Exh. JJ.) In his petition, he raised numerous issues: (1) trial and appellate counsel rendered ineffective assistance; (2) his cellular phone was illegally searched and seized; (3) his Sixth Amendment, equal protection, and due process rights were violated when he was not present during jury selection; (4) "Voir Dire"; (5) the judge denied investigation into "Visible Extra Security Measures (Hand Cuffs) (sic)"; (6) the trial court allowed the State to introduce to the jury that Petitioner had a prior felony conviction even though he did not take the stand; (7) "Sufficiency of Evidence"; (8) he was denied a photo lineup by "a Judge and Attorney"; (9) "Speedy Trial Rights"; (10) the judge and attorneys knew Petitioner had a mental illness, but failed to have him seen by doctors; (11) he suffered prejudice when the jury saw him being escorted in handcuffs outside of the courtroom; (12) "Impeachment of Officer Hamernick to Jury"; (13) "Impeachment of Witnesses and there (sic) arrest records to Jury"; (14) Petitioner was never placed under arrest or read his <u>Miranda</u> rights; and (15) Petitioner's due process rights were violated when he was not provided an adequate competency determination, and trial counsel knew that he was incompetent to stand trial. (<u>Id.</u>)

The Arizona Court of Appeals denied review of Petitioner's petition on November 14, 2012. (Exh. MM.)

On January 3, 2010, Petitioner petitioned for review in the Arizona Supreme Court, asserting the same issues. (Exh. NN.) The Arizona Supreme Court summarily denied review on April 29, 2013. (Exh. OO.)

On September 12, 2013, and September 19, 2013, Petitioner filed a Petition for Writ of Habeas Corpus and motion to "add pages to federal habeas corpus," respectively, which advance the following grounds for relief: In Ground One, Plaintiff asserts a Fourth Amendment violation based on the search and seizure of his cell phone. In Ground Two, Petitioner asserts "Impeach Officer Hamemick Rule 609." In Ground Three, Petitioner asserts that he received the ineffective assistance of trial counsel. In Ground Four, Petitioner asserts that he was incompetent to be tried and that counsel was ineffective in failing to raise the issue. In Ground Five, Petitioner asserts that he was illegally sentenced. In Ground Six, Petitioner asserts that the court failed to respond to jury questions. In Ground Seven, Petitioner asserts that attorneys Everett and Webb rendered ineffective assistance. (Docs. 1, 6.)

**DISCUSSION**

In their Answer, Respondents contend that Grounds One, Two, Five, and Six fail to state a basis for federal habeas relief; and Grounds Three, Four, and Seven fail on the merits. As such, Respondents request that the Court deny and dismiss Petitioner's habeas petition with prejudice.

**A.      Non-Cognizable Claims**

In Ground One, Petitioner contends that his Fourth Amendment right to be free from unreasonable searches and seizures was violated when law enforcement officers seized his cellular phone, and searched through the photographs contained therein. (Doc. 1.) He submits that one of the retrieved photographs depicting him holding a handgun should not have been admitted at trial. (Id.)

When the State provides an opportunity for full and fair litigation of a Fourth Amendment claim, such a claim is not cognizable in federal habeas proceedings. See Stone v. Powell, 428 U.S. 465, 481-82 (1976); Villafuerte v. Stewart, 111 F.3d 616, 627 (9th Cir. 1997); Siripongs v. Calderon, 35 F.3d 1308, 1321 (9th Cir. 1994); Caldwell v. Cupp, 781 F.2d 714, 715 (9th Cir. 1986). Stone only requires the initial opportunity for a full and fair hearing. See Caldwell, 781 F.2d at 715. "Such an opportunity for a fair hearing forecloses this court's

1    inquiry, upon habeas corpus petition, into the trial court's subsequent course of action." Id.

2    at 715.

3          The record reflects that Petitioner was provided a full and fair opportunity to litigate

4    his Fourth Amendment claim.  Petitioner filed a motion to suppress the seized photographs

5    and the trial court conducted an evidentiary hearing on his motion on May 10, 2007.  (Exhs.

6    H, J.)  Following the presentation of evidence and argument, the court held that the

7    photograph of Petitioner holding a gun would be admissible at trial, while ruling the other

8    photographs obtained from the cellular phone were inadmissible.  (Exh. J.)

9          Petitioner challenged the trial court's decision on direct appeal.  (Exhs. T, U.)  The

10   Arizona Court of Appeals affirmed the trial court's denial of the motion to suppress in a

11   memorandum decision.  (Exh. V.)  Finally, Petitioner had, but did not avail himself of, the

12   opportunity to seek discretionary review in the Arizona Supreme Court.  (Exh. X.)

13         Because Petitioner was provided a full and fair opportunity to litigate his Fourth

14   Amendment claim, Ground One is not cognizable on federal habeas review.  See Stone, 428

15   U.S. at 481-82; Villafuerte, 111 F.3d at 627.

16         Regarding Grounds Two, Five, and Six, the Court can grant habeas relief "only on the

17   ground that [a petitioner] is in custody in violation of the Constitution or laws or treatises of

18   the United States."  28 U.S.C. § 2254(a).  "[I]t is not the province of a federal habeas court

19   to reexamine state-court determinations on state-law grounds." Estelle v. McGuire, 502 U.S.

20   62, 67–68 (1991); see Gilmore v. Taylor, 508 U.S. 333, 348-49 (1993) ("[M]ere error of state

21   law, one that does not rise to the level of a constitutional violation, may not be corrected on

22   federal habeas."); Lewis v. Jeffers, 497 U.S. 764, 780 (1990) ("[F]ederal habeas corpus relief

23   does not lie for errors of state law.").  And, a petitioner may not "transform a state law issue

24   into a federal one merely by asserting a violation of due process."  Poland v. Stewart, 169

25   F.3d 573, 584 (9th Cir. 1999) (quoting Langford v. Day, 110 F.3d 1380, 1389 (9th Cir. 1996));

26   see Engle v. Isaac, 456 U.S. 107, 119-21 (1982) ("While they attempt to cast their first claim

27   in constitutional terms, we believe that this claim does no more than suggest that the

28   instructions at respondents' trials may have violated state law.").

1    In Grounds Two, Five, and Six, Petitioner argues, respectively, that he should have
2    been allowed to impeach Officer Hamernick with his prior DUI conviction, that he was
3    illegally sentenced as a non-dangerous offender with two prior convictions despite being
4    convicted as a first-time dangerous offender, and that the jurors were denied the answers to
5    two of their questions inquiring as to the number of bullets that were found in the gun and
6    magazine. (Doc. 1.)  Petitioner, thus, challenges the state court's application of the Arizona
7    Rules of Evidence and Arizona's statutory sentencing scheme, and he fails to allege – much
8    less mention – federal constitutional or statutory violations.

9    As such, Petitioner's claims are not reviewable on federal habeas review because they
10   do not allege violations of federal constitutional law, but instead exclusively involve the
11   interpretation and application of state law.  See 28 U.S.C. § 2254(a); Estelle, 502 U.S. at 67
12   ("We have stated many times that 'federal habeas corpus relief does not lie for errors of state
13   law.'"); Nunes v. Ramirez-Palmer, 485 F.3d 432, 443 (9th Cir. 2007) ("[I]n federal court,
14   there is no right to bring a habeas petition on the basis of a violation of state law.").  A state
15   prisoner can obtain federal habeas corpus relief only if he is held in violation of the
16   Constitution or laws and treatises of the United States.  See Engle, 456 U.S. at 119.  Further,
17   federal habeas relief is not available for attacks on violations of state law or procedure and
18   is unavailable for alleged error in the interpretation or application of state law.  See McGuire,
19   502 U.S. at 67-68; Peltier v. Wright, 15 F.3d 860, 861-62 (9th Cir. 1994).

20   Accordingly, because Grounds One, Two, Five, and Six fail to state a basis for federal
21   habeas relief, the Court will recommend that said claims be denied.

22   **B.    Merits**

23   Pursuant to the AEDPA[2], a federal court "shall not" grant habeas relief with respect
24   to "any claim that was adjudicated on the merits in State court proceedings" unless the state
25   court decision was (1) contrary to, or an unreasonable application of, clearly established
26   federal law as determined by the United States Supreme Court; or (2) based on an
27   
28   [2] Antiterrorism and Effective Death Penalty Act of 1996.

1   unreasonable determination of the facts in light of the evidence presented in the state court

2   proceeding.   See 28 U.S.C. § 2254(d); Williams v. Taylor, 529 U.S. 362, 412-13 (2000)

3   (O'Connor, J., concurring and delivering the opinion of the Court as to the AEDPA standard

4   of review).   "When applying these standards, the federal court should review the 'last

5   reasoned decision' by a state court ... ."  Robinson v. Ignacio, 360 F.3d 1044, 1055 (9th Cir.

6   2004).

7         A state court's decision is "contrary to" clearly established precedent if (1) "the state

8   court applies a rule that contradicts the governing law set forth in [Supreme Court] cases,"

9   or (2) "if the state court confronts a set of facts that are materially indistinguishable from a

10   decision of [the Supreme Court] and nevertheless arrives at a result different from [its]

11   precedent."   Williams, 529 U.S. at 404-05.   "A state court's decision can involve an

12   'unreasonable application' of Federal law if it either 1) correctly identifies the governing rule

13   but then applies it to a new set of facts in a way that is objectively unreasonable, or 2)

14   extends or fails to extend a clearly established legal principle to a new context in a way that

15   is objectively unreasonable."  Hernandez v. Small, 282 F.3d 1132, 1142 (9th Cir. 2002).

16         In Grounds III, IV, and VII, Petitioner argues that he received the ineffective

17   assistance of trial counsel by: (1) failing to communicate with Petitioner about his case; (2)

18   failing to request that Petitioner undergo Rule 11 evaluations; (3) failing to call the defense

19   witnesses Petitioner "want[ed] at trial"; (4) failing to investigate; (5) waiving his presence

20   at different points of the trial; (6) failing to point out to the court that there was a reasonable

21   doubt as to his guilt; and (7) allowing the victims to lie on the stand.  (Docs. 1, 6.)

22         The two-prong test for establishing ineffective assistance of counsel was established

23   by the Supreme Court in Strickland v. Washington, 466 U.S. 668 (1984).  In order to prevail

24   on an ineffective assistance claim, a convicted defendant must show (1) that counsel's

25   representation fell below an objective standard of reasonableness, and (2) that there is a

26   reasonable probability that, but for counsel's unprofessional errors, the result of the

27   proceeding would have been different.  See id. at 687-88.

28

1    Regarding the performance prong, a reviewing court engages a strong presumption
2  that counsel rendered adequate assistance, and exercised reasonable professional judgment
3  in making decisions.  See id. at 690.  "[A] fair assessment of attorney performance requires
4  that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the
5  circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's
6  perspective at the time."  Bonin v. Calderon, 59 F.3d 815, 833 (9th Cir. 1995) (quoting
7  Strickland, 466 U.S. at 689).  Moreover, review of counsel's performance under Strickland
8  is "extremely limited": "The test has nothing to do with what the best lawyers would have
9  done.  Nor is the test even what most good lawyers would have done.  We ask only whether
10 some reasonable lawyer at the trial could have acted, in the circumstances, as defense counsel
11 acted at trial."  Coleman v. Calderon, 150 F.3d 1105, 1113 (9th Cir.), judgment rev'd on other
12 grounds, 525 U.S. 141 (1998).  Thus, a court "must judge the reasonableness of counsel's
13 challenged conduct on the facts of the particular case, viewed as of the time of counsel's
14 conduct."  Strickland, 466 U.S. at 690.

15   If the prisoner is able to satisfy the performance prong, he must also establish
16 prejudice.  See id. at 691-92; see also Smith v. Robbins, 528 U.S. 259, 285 (2000) (burden
17 is on defendant to show prejudice).  To establish prejudice, a prisoner must demonstrate a
18 "reasonable probability that, but for counsel's unprofessional errors, the result of the
19 proceeding would have been different."  Strickland, 466 U.S. at 694.  A "reasonable
20 probability" is "a probability sufficient to undermine confidence in the outcome."  Id.  A
21 court need not determine whether counsel's performance was deficient before examining
22 whether prejudice resulted from the alleged deficiencies.  See Robbins, 528 U.S. at 286 n.14.
23 "If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient
24 prejudice, which we expect will often be so, that course should be followed."  Id. (quoting
25 Strickland, 466 U.S. at 697).

26   In reviewing a state court's resolution of an ineffective assistance of counsel claim,
27 the Court considers whether the state court applied Strickland unreasonably:

28

> For [a petitioner] to succeed [on an ineffective assistance of counsel claim], ... he must do more than show that he would have satisfied <u>Strickland</u>'s test if his claim were being analyzed in the first instance, because under § 2254(d)(1), it is not enough to convince a federal habeas court that, in its independent judgment, the state-court decision applied <u>Strickland</u> incorrectly.  Rather, he must show that the [state court] applied <u>Strickland</u> to the facts of his case in an objectively unreasonable manner.

<u>Bell v. Cone</u>, 535 U.S. 685, 698-99 (2002) (citations omitted); <u>see also</u> <u>Woodford v. Visciotti</u>, 537 U.S. 19, 24-25 (2002) ("Under § 2254(d)'s 'unreasonable application' clause, a federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the state-court decision applied <u>Strickland</u> incorrectly.  Rather, it is the habeas applicant's burden to show that the state court applied <u>Strickland</u> to the facts of his case in an objectively unreasonable manner.") (citations omitted).

**1.     Ground Three**

In Ground Three, Petitioner alleges that his counsel was ineffective for failing to communicate with him about his case, call the defense witnesses he "want[ed] at trial," investigate, secure his presence during trial proceedings, point out to the court that there was a reasonable doubt as to his guilt, and "expose the victims' lies on the stand."  (Doc. 1.)

First, the Court finds that Petitioner's allegations stating that trial counsel failed to communicate with him about his case, call the defense witnesses he wanted, and investigate fail to adequately state a claim for ineffective assistance of counsel.  Specifically, Petitioner does not assert a breakdown of communication with trial counsel, explain which witnesses he wanted to testify at trial, or what investigation was lacking.  Petitioner's assertions, without more, cannot demonstrate that counsel performed deficiently.  Further, Petitioner has also failed to explain how counsel's alleged failures caused him prejudice.  Petitioner does not describe what his desired witnesses would have testified to, or how it would have ultimately affected the verdict.  Likewise, Petitioner does not describe what further investigation by counsel would have uncovered.  Because Petitioner has not specified how trial counsel's performance was deficient or how he was prejudiced with reference to these claims, the state court's rejection of them was not an unreasonable application of <u>Strickland</u>.

Similarly, Petitioner's claim that trial counsel was ineffective for waiving Petitioner's presence at trial lacks merit.  Petitioner contends that trial counsel "[w]aived my rights at court dates and at trial.  I told the Judge I wanted to be present to question the Jury and pick the Jury to be in my case.  I was present at Jury selection.  Was present when Jury had question they needed Answer."  The Court finds that these statements are, on their face, contradictory.  Petitioner first appears to allege that counsel was ineffective for waiving his presence, but then acknowledges that he was present for jury selection.  Petitioner further concedes that he was present when the jury had a question that they needed answered.  Petitioner thus does not specify when trial counsel waived his presence, how such action rendered her performance deficient, or in what way his absence resulted in prejudice.  Petitioner has thus failed to carry his burden under Strickland.

Petitioner next alleges that trial counsel was ineffective for failing to point out to the courts that reasonable doubt existed.  The record demonstrates, however, that after the State rested its case, counsel moved for a judgment of acquittal, arguing that the State had failed to present substantial evidence to warrant a conviction.  (Exh. M at 70-71; 121-35.)  Specifically, counsel argued that, with respect to Count 4 – the aggravated assault of J.S. – J.S.'s testimony was inconsistent with the testimony of the other witnesses.  (Id.)  In closing argument, counsel pointed out J.S.'s inconsistencies and lies, the lack of physical evidence, and the lack of corroborating testimony.  (Id. at 121-35.)  Trial counsel then specifically referenced the reasonable doubt instruction, and argued that the State had not proven each and every element beyond a reasonable doubt as there were holes in the State's case.  (Id. at 133-35.)  The record thus demonstrates that, at each appropriate instance in the trial, counsel pointed out that reasonable doubt existed.

Moreover, even assuming that counsel rendered deficient performance in this respect, Petitioner cannot demonstrate resulting prejudice.  The State successfully moved to dismiss Counts 2 and 3 after resting its case, acknowledging there was no reasonable likelihood of conviction as to those counts.  (Id. at 70.)  As to Counts 1 and 4, the jury was unable to reach a decision and the trial court declared a mistrial.  (Exh. O at 7, 16.)  Trial counsel thus

1  effectively established reasonable doubt for four of the six counts.  Petitioner has failed to
2  carry his burden under Strickland.

3        Finally, Petitioner contends that counsel was ineffective for allowing the victims to
4  lie on the stand.  Trial counsel, however, cross-examined each of the three victims and
5  questioned them about their inconsistent statements. (Exh. L at 53-62, 80-84, 134-57.)  She
6  then pointed out the inconsistencies and "lies" in closing argument, "We know [J.S. is] lying
7  at some time, and we know that at some point he has lied to somebody." (Exh. M at 121-35.)
8  Consequently, the record demonstrates that counsel pointed out the victims' inconsistent
9  statements to the jury, and further asserted that J.S. lied at some point because he provided
10  different accounts to the police, prosecutor, and jury.   Additionally, Petitioner cannot
11  demonstrate prejudice.

12        Because Petitioner has not demonstrated that trial counsel's performance was deficient
13  or that he was prejudiced as a result, the state court's rejection of Ground Three was not an
14  unreasonable application of Strickland.

15  \\\

16  \\\

17        **2.     Grounds Four and Seven**

18        In Grounds IV and VII, Petitioner argues that trial counsel Kenneth D. Everett, Robert
19  Webb, and Susan A. Maga were ineffective for failing to request a Rule 11 hearing, alleging
20  he was incompetent to stand trial. (Docs. 1, 6.)  Petitioner claims that he has suffered from
21  "mental health illnesses, bi-polar, A.D.H.D., paranoia schizo," had previously entered into
22  an "insane plea," had been to State hospitals, and that his attorneys were aware of this
23  history.  The Court finds, however, that the state court's dismissal of this claim was neither
24  contrary to, nor an unreasonable application of Strickland.

25        While Petitioner has submitted evidence suggesting that he suffers from mental health
26  issues, he has not presented any evidence to support his claim that he was "unable to
27  understand the nature of the proceedings and assist in his own defense." Godinez v. Moran,
28  509 U.S. 389, 396 (1993); see Ariz.R.Crim.P. 11.1 ("A person shall not be tried, convicted

- 13 -

sentenced or punished for a public offense, except for proceedings pursuant to A.R.S. § 36-3707(D), while, as a result of mental illness, defect, or disability, the person is unable to understand the proceedings against him or her or to assist in his or her own defense."). Rather, the record demonstrates that Petitioner had a sophisticated understanding of the criminal justice system and nature of the proceedings before him.  Specifically, at a settlement conference, when discussing the plea agreement with the trial court, Petitioner capably debated the time it was taking to go to trial, the length of the proffered sentence, the State's ability to admit his prior convictions even if he did not take the stand at trial, a pending motion for DNA testing on the handgun, and the State's lack of physical evidence to support the charge of discharge of a firearm at a structure. (Exh. G at 9-18.)  Later, at a Donald hearing, Petitioner informed the trial court that he understood the consequences of proceeding to trial. (Exh. K.)  After the verdicts were read, Petitioner expressed to the trial court that he believed he was found guilty because a juror allegedly saw him in the hallway. (Exh. O at 16-17.)  Finally, at sentencing, Petitioner challenged the veracity of some of the State's alleged aggravators. (Exh. Q at 22.)  The record thus demonstrates that Petitioner, throughout trial, understood the nature of the proceedings and capably assisted in his own defense.

Petitioner, however, submits an email and letter purporting to prove that he was incompetent to stand trial.  To the contrary, these documents demonstrate that a motion for Rule 11 hearing would have been futile.  In the November 7, 2006 email, Petitioner's mitigation specialist expressed her concern that Petitioner had been taken off of his medication.  (Doc. 6 at 5.)  The email explained, however, that, with the appropriate treatment, Petitioner "was coping well, was affectively assisting his lawyer in his defense and basically he appeared to be responding well to treatment." (Id.)  Then, a month later, former defense counsel Everett sent a letter to the State Bar indicating that, while he believed Petitioner had mental health issues, he did not believe that Petitioner was insane or that he was incompetent to stand trial. (Id. at 6.)

1    Thus, Petitioner's own documents demonstrate he had a sophisticated understanding

2    of his proceedings, actively assisted his own defense, and despite his alleged mental health

3    issues, was competent to stand trial.  A Rule 11 hearing would have been futile, and trial

4    counsels' performance was not deficient for failing to request one.  See James v. Borg, 24

5    F.3d 20, 27 (9th Cir. 1994) ("[F]ailure to make a futile motion does not constitute ineffective

6    assistance of counsel.").  Likewise, in light of Petitioner's submissions, there is nothing in

7    the record to suggest that the outcome would have been different had trial counsel requested

8    a Rule 11 evaluation.  Petitioner has thus failed to carry his burden under Strickland.

9                                                          **CONCLUSION**

10   Having determined that Grounds One, Two, Five, and Six fail to state a basis for

11   federal habeas relief; and Grounds Three, Four, and Seven fail on the merits, the Court will

12   recommend that Petitioner's Petition for Writ of Habeas Corpus be denied and dismissed

13   with prejudice.

14   **IT IS THEREFORE RECOMMENDED** that Petitioner's Petition for Writ of

15   Habeas Corpus pursuant to 28 U.S.C. § 2254 (Docs. 1, 6) be **DENIED** and **DISMISSED**

16   **WITH PREJUDICE**.

17   **IT IS FURTHER RECOMMENDED** that a Certificate of Appealability and leave

18   to proceed *in forma pauperis* on appeal be **DENIED** because Petitioner has not made a

19   substantial showing of the denial of a constitutional right and because the dismissal of the

20   Petition is justified by a plain procedural bar and jurists of reason would not find the

21   procedural ruling debatable.

22   This recommendation is not an order that is immediately appealable to the Ninth

23   Circuit Court of Appeals. Any notice of appeal pursuant to Rule 4(a)(1), Federal Rules of

24   Appellate Procedure, should not be filed until entry of the district court's judgment. The

25   parties shall have fourteen days from the date of service of a copy of this recommendation

26   within which to file specific written objections with the Court. See 28 U.S.C. § 636(b)(1);

27   Rules 72, 6(a), 6(b), Federal Rules of Civil Procedure. Thereafter, the parties have fourteen

28   days within which to file a response to the objections. Failure timely to file objections to the

Magistrate Judge's Report and Recommendation may result in the acceptance of the Report and Recommendation by the district court without further review. <u>See</u> <u>United States v. Reyna-Tapia</u>, 328 F.3d 1114, 1121 (9th Cir. 2003). Failure timely to file objections to any factual determinations of the Magistrate Judge will be considered a waiver of a party's right to appellate review of the findings of fact in an order or judgment entered pursuant to the Magistrate Judge's recommendation. <u>See</u> Rule 72, Federal Rules of Civil Procedure.

DATED this 25th day of November, 2014.

Michelle H. Burns
United States Magistrate Judge